UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ZACHARY EATON, | ) |
|       Plaintiff, | ) ) ) |
| v. | )    CV-09-71-B-W ) |
| UNITED AMERICA INSURANCE GROUP, PENN-AMERICA INSURANCE CO. | ) ) ) ) |
|       Defendants. | ) ) |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

In this reach and apply action, the Court concludes that the assault and battery exclusion bars a bystander claim from insurance coverage because his injuries resulted from the assault.

**I.    STATEMENT OF FACTS**

During the evening of November 23, 2005, Zachary Eaton was standing near a door to the Finger Rock Bar inside Ushuaia, a dance bar in Orono, Maine, when the door flew open, slammed against his left hand, and broke his ring finger. *Statement of Material Facts in Support of Defs' Mot. for Summ. J.* ¶¶ 7, 14-16 (Docket # 19) (*Defs' SMF*). Emerging through the door was "a large, bald, red-haired" Ushuaia bouncer, who held a young man in an arm-lock choke hold; the bouncer proceeded to lift the customer off the ground and forcibly evict him from the club. *Id.* ¶ 9. As a result of the bouncer's slamming open the door, Mr. Eaton's finger required medical treatment, and he lost income. *Id.* ¶¶ 14-15. On November 7, 2008, Albenco, Inc. (Albenco), the owner of Ushuaia, entered into a stipulation that allowed Mr. Eaton to take judgment against it in the amount of $125,000 for Mr. Eaton's injuries, and on November 26, 2008, a Superior Court Justice signed the Judgment in Mr. Eaton's favor. *Id.* ¶ 18.

On January 6, 2009, Mr. Eaton filed a lawsuit under Maine's reach and apply statute in Penobscot County Superior Court to collect insurance proceeds from the commercial policy Penn-American Insurance Company (Penn-American) issued in favor of Albenco.[1] *Compl. Attach. 3* (Docket # 1). On February 24, 2009, Penn-American removed the cause of action[2] and on January 29, 2010, Penn-American moved for summary judgment on the ground that its policy excludes coverage for Mr. Eaton's injuries. *Notice of Removal* (Docket # 1); *Defs' Mot. for Summ. J.* (Docket # 18).[3] Although Mr. Eaton does not contest any of Penn-American's statements of material fact, he objects to the motion for summary judgment and claims that the Penn-American policy does provide coverage to Albenco for his injuries. *Pl.'s Opp'n to Defs' Mot. for Summ. J* (Docket # 20) (*Pl.'s Resp.*).

The Penn-American policy provides insurance coverage for bodily injury as follows:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILTY**

**1.    Insuring Agreement**

     **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies.

---

[1] "Maine's reach and apply statute allows an injured party who has obtained a final judgment against an insured tortfeasor to institute a separate civil action against the insurer to satisfy the judgment if, among other things, the tortfeasor 'was insured against such liability.'" *Edwards v. Lexington Ins. Co.*, 507 F.3d 35, 38 n.1 (1st Cir. 2007) (quoting 24-A M.R.S.A. § 2904); *see also Ashe v. Enter. Rent-A-Car*, 2003 ME 147, ¶ 14, 838 A.2d 1157, 1162.

[2] The Court has diversity jurisdiction under 28 U.S.C. § 1332 since Mr. Eaton is a resident of the state of Maine, Penn-American Insurance Company is a Pennsylvania corporation with a principal place of business in Pennsylvania, and the amount in controversy exceeds $75,000.

[3] Although United America Insurance Group is a separately named defendant, Penn-American says that United America Insurance Group is not a legal entity. It is instead the name of a group of affiliated insurance companies, including Penn-American. In view of Defendant's representation and without objection from Mr. Eaton, the Court treats the Defendant's representation as a motion to dismiss and ORDERS United America Insurance Group DISMISSED as a party defendant.

*Defs' SMF* Attach. 1 at 14.  The policy requires that the bodily injury be caused by an occurrence that takes place in the coverage territory and within the policy period.  *Id.*

The policy then excludes bodily injury resulting from an assault and battery or physical altercation:

> In consideration of the premium charged it is hereby understood and agreed that this policy will not provide coverage, meaning indemnification or defense costs for damages alleged or claimed for:
>
>> "Bodily injury" . . . or any other damages resulting from assault and battery or physical altercations that occur in, on, near or away from the insured's premises;
>>
>> 1) Whether or not caused by, at the instigation of, or with the direct or indirect involvement of the insured, the insured's employees, patrons or other persons in, on, near or away from insured's premises, or
>> 2) Whether or not caused by or arising out of the insured's failure to properly supervise or keep the insured's premises in a safe condition, or
>> 3) Whether or not caused by or arising out of any insured's act or omission in connection with the prevention or suppression of the assault and battery or physical altercation, including, but not limited to, negligent hiring, training and/or supervision.
>> 4) Whether or not caused by or arising out of negligent, reckless, or wanton conduct by the insured, the insured's employees, patrons or other persons.

*Id.* at 42.  Penn-American contends Mr. Eaton's injury occurred from an assault or physical altercation and is excluded from coverage; Mr. Eaton contends that his injury was caused by a separately intervening event—the door swinging open—and the excluded assault was not against him, but against a third party—the person being forcibly removed.

## II.   DISCUSSION

In *Mallar v. Penn-Am. Ins. Co.*, the Supreme Judicial Court of Maine discussed the legal standards applicable to the interpretation of an insurance contract:

> The interpretation of an insurance contract is a matter of law. . . . Insurance contract language is ambiguous if it is reasonably susceptible of different interpretations or if any ordinary person in the shoes of the insured would not understand that the policy did not cover claims such as those brought. Any ambiguity in an insurance contract is construed strictly against the insurer and liberally in favor of the insured. It is [the insured's] burden, however, to show that his injury falls within the scope of the contract.

2003 ME 143, ¶ 3 n.1, 837 A.2d 133, 134 n.1.

Penn-American is no stranger to coverage disputes involving the assault and battery exclusion and cites caselaw in which it has been involved where the assault and battery exclusion has been tested and the courts concluded that coverage was barred. *Penn-Am. Ins. Co. v. Cox*, Civil Action No. 2:07CV22, 2007 U.S. Dist. LEXIS 80796 (N.D.W. Va. Oct. 31, 2007); *Penn-Am. Ins. Co. v. Lewis*, 395 F. Supp. 2d 250 (D. Md. 2005); *Penn-Am. Ins. Co. v. The Bar*, 201 S.W.2d 91 (Mo. App. 2006). Noting that these cases involve a claim of coverage from the direct victim of an assault, Mr. Eaton seeks to distinguish these cases by stressing that he was an innocent bystander, not the intended victim of the bouncer's assault.

Mr. Eaton says that "Maine law requires intentional physical contact for an assault or battery." *Pl.'s Resp.* at 4. He then says that because intentional physical contact is required for an assault, the exclusion does not apply because the bouncer did not intend to assault Mr. Eaton. The Court does not reach this question. *Compare Bucci v. Essex Ins. Co.*, 393 F.3d 285, 297 (1st Cir. 2003) (stating that "[a]t common law an unlawful touching of the person of another, unpermitted and unprivileged, done with the intention of bringing about a harmful or offensive contact, constituted an assault and battery") (quoting *Wilson v. State*, 268 A.2d 484, 486-87 (Me. 1970)), *with* 17-A M.R.S.A. 207(1)(A) (defining a criminal assault as including intentional, knowing, and reckless actions); *see Pattershall v. Jenness*, 485 A.2d 980, 984 (Me. 1984) (addressing whether a criminal conviction for assault estopped the defendant from defending the

liability aspect of a later civil action based on civil assault); *Patrons-Oxford Mut. Ins. Co. v. Dodge*, 426 A.2d 888, 892 (Me. 1981) (same). The Court also does not reach the question of whether the term "physical altercation," which must mean something different than "assault and battery," would include the concept of intentionality.

The Court disagrees with Mr. Eaton's premise: that to be excluded from coverage, the assault and battery or physical altercation must be intentionally directed against him. There is no dispute that the bouncer was intentionally grappling with the unruly customer and that as a consequence of this altercation Mr. Eaton sustained his injury. The policy excludes "bodily injury . . . <u>resulting</u> from assault and battery or physical altercations." *Defs' SMF* Attach. 1 at 42 (emphasis added). It does not say "bodily injury intentionally resulting from an assault and battery or physical altercation."

To the extent that Mr. Eaton is asserting that as an innocent bystander the exclusion cannot apply to him, *Mallar* forecloses this argument. *Mallar*, 2003 ME ¶¶ 2, 3, 837 A.2d at 134. In *Mallar*, a bartender engaged in a verbal altercation with a customer, who having been removed from the pub, returned and shot the bartender dead. *Id.* Mr. Mallar, a wholly innocent bystander, was sprayed with the bartender's blood. *Id.* Interpreting identical exclusionary language in a case involving Penn-American, the Maine Law Court quickly concluded that the exclusion applied because the claimant's injuries "resulted from an assault and battery." *Id.* ¶ 6, 837 A.2d at 135. Like the shooter in *Mallar*, the bouncer here did not intend to injure Mr. Eaton, but Mr. Eaton's injuries nevertheless "resulted from an assault and battery." Mr. Eaton's assertion that the swinging door was not part of the bouncer's assault is no more convincing than Mr. Mallar's claim that blood spattering was not part of the deadly assault against the bartender. *Accord Acceptance Ins. Co. v. Walkingstick*, 887 F. Supp. 958, 962 (S.D. Tex. 1995), *adopting*

*magistrate judge's recommended decision*, Civil Action H-93-3683, 1995 U.S. Dist. LEXIS 7619 (S.D. Tex. Apr. 25, 1995) (holding that assault and battery exclusionary clauses "exclude coverage of all claims arising out of an assault and battery regardless of the cause"); *I.J.G., Inc. v. Penn-Am. Ins. Co.*, 803 A.2d 430 (D.C. App. 2002) (no duty to defend because claim based on injuries from a bottle thrown during a violent fight among other patrons at the bar); *First Financial Ins. Co. v. Bugg*, 265 Kan. 690, 698-701 (1998) (finding assault and battery exclusionary clause applied to a bystander); *Nastasia v. Sylvan Inc.*, 617 So.2d 128 (La. App. 1993) (same).

Mr. Eaton's final argument is that the bouncer's door slamming is a separate negligent act from his assault on the unruly customer and therefore the assault and battery exclusion does not apply. The First Circuit addressed a similar argument in *Bucci*, where a customer waiting in line to enter a Portland, Maine nightclub sustained an assault from an unknown assailant. *Bucci*, 393 F.3d at 286. The bar's insurer asserted the assault and battery exclusion, and the claimant responded that the bar's employees failed to take reasonable measures after the assault to assist him. *Id.* at 288. The plaintiff successfully distinguished between the assault and the bar's response following the assault in establishing that the bar's insurer had a duty to defend the claimant's action. *Id.*

In *Bucci*, however, the First Circuit carefully distinguished among three different cases: *Winnacunnet Coop. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 84 F.3d 32 (1st Cir. 1996), *Mallar*, and *Bucci* itself. The *Winnacunnet* case involved the notorious murder of Gregory Smart by two high school students, one of whom was having an affair with Mr. Smart's wife, Pamela Smart. *Winnacunnet*, 84 F.3d at 33 n.1. Three of the high school students involved in the murder and their parents, as well as a former student intern of Ms. Smart, sued the local

6

school district, claiming that it was negligent in hiring, training, and supervising Ms. Smart. *Id.* at 33-34. The school district's insurer, National Union, declined coverage, asserting that the claims arose out of the assault and battery of Mr. Smart. *Id.* at 34-35.[4] The First Circuit affirmed the district court's denial of coverage, concluding that because the claims of damage flowed directly from the assault, the negligent hiring and supervision claims were barred by the assault and battery exclusion. *Id.* at 38.

> The First Circuit in *Bucci* analyzed the three cases:
>
> [*Winnacunnet*] stands for the proposition that negligent activities *before* an assault which *do not* cause any injuries *independent* of the assault fall within an assault/battery exclusion and are not covered by a policy that contains such an exclusion. *Mallar* explains *Winnacunnet* as a case where although the plaintiffs allocated blame elsewhere, their alleged injuries nonetheless originated from a murder. However, this case involved allegations of negligent activities *after* an assault which allegedly caused (or exacerbated) injuries *independent* of (or in addition to) the assault.

*Bucci*, 393 F.3d at 291 (internal punctuation and citations omitted; emphases in original). For purposes of the instant case, the distinction *Bucci* highlights is crucial: did Mr. Eaton's injuries flow directly from the assault or did his injuries flow from acts independent of the assault. Based on the agreed-upon facts, it is unarguable that Mr. Eaton's finger injury occurred because the Ushuaia bouncer was assaulting a customer. In *Bucci*'s language, Mr. Eaton's injuries "originated from" the assault. *Id.*

Here, where the "exclusion is not ambiguous" and Mr. Eaton "has failed to show that his injury fell within the scope of the contract," his claim is not covered. *Mallar*, 2003 ME at ¶ 7, 837 A.2d at 135 (internal quotations omitted).

### III. CONCLUSION

---

[4] The insurer also asserted an exclusion for "any claim arising out of bodily injury to . . . or death of any person." *Winnacunnet*, 84 F.3d at 35.

The Court DISMISSES United American Insurance Group as a Defendant, and the Court GRANTS Penn-American Insurance Company's Motion for Summary Judgment (Docket # 18). The Court ORDERS Judgment to issue in favor of United American Insurance Group and Penn-American Insurance Company and against Zachary Eaton.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 17th day of February, 2010